**Campsey v. Read**

*Sanford S. Finder,* for plaintiff.
*M. Scot Curran,* for defendant.

RODGERS, *J.,* October 7, 1982—Plaintiff, Mary Kathleen Campsey, has filed a complaint in equity against defendants, Paul C. Read and Marcia G. Read, his wife, asking for reformation of a deed between the parties, dated December 30, 1977, to exclude about eight acres, consisting of two parcels, one a parcel of about five acres, and the other consisting of two lots containing three acres more or less, from a farm of about 145 acres located in Donegal Township, Washington County, conveyed to defendants, Read, by plaintiff, Campsey.

Plaintiff's request for reformation of the deed is refused.

In September 1977, plaintiff, Mary K. Campsey, and her husband, James L. Campsey, since deceased, listed a farm in Donegal Township for sale with the J.C. McCleery Real Estate Agency, listing a dwelling house, barns and outbuildings situate on one hundred acres, plus, in Donegal Township.

About October 4, 1977, defendants, Read, signed an agreement of sale, witnessed by the selling broker, Judith Gardner, describing the premises to be sold as the Campsey farm located in R. D. No. 2, Claysville, containing 160 acres, more or less, and having erected thereon a two story brick dwelling, barn and other outdwellings at a purchase price of $90,000, payable $1,000, upon the signing of the agreement, and the balance at closing.

On October 13, 1977, plaintiff, Mary K. Campsey, and her husband, James L. Campsey, signed the agreement in the presence of Frank S. Alley, a real

estate salesman employed by the listing broker, J.C. McCleery.

In October, 1977, the sellers, Campsey, engaged Attorney Frank Carroll to represent them, and he prepared a second agreement of sale, dated November 1977, providing for the payment of the purchase price in installments for income tax reasons, described the premises to be sold as 174 plus acres in accordance with a plot made on December 9, 1948, but excepting and reserving all previous conveyances by the sellers "it being understood that there is approximately 150 acres more or less remaining which is being conveyed by the sellers to the buyers."

Before the buyers signed the agreement, defendant, Paul Read, met with Attorney Carroll, and asked for a reduction in the purchase price on account of the reduced acreage, which Carroll refused, but he did agree to a reduction in the interest rate on the purchase money mortgage.

At that time, also, Read requested that the sellers survey the premises to be conveyed, at seller's expense, but Carroll refused, nor did the buyers agree, at that time, to a survey at the buyers' expense. During this period, James L. Campsey was mortally ill, and he and his wife, Mary K. Campsey, relied on Attorney Carroll to prepare the agreement of sale and deed, and upon their nephew, Michael, to point out the boundaries of the property to be sold to the listing broker, J.C. McCleery and his salesman, Frank Alley.

James L. Campsey, the husband of Mary Kathleen Campsey, had acquired this farm in 1948 from Mary Ada Campsey, and at that time the farm included about 174 acres, a portion of this farm lying north of State Route 231, also known as Legislative Route 62108, with the bulk lying to the south and

west of this highway. Prior to the sale to the Reads, Campsey had also acquired adjoining acreage from a Glenn Swartz and others.

Campsey had also made conveyances of various parcels and had built a new home north of State Route 231 on a parcel which was a part of the 174 acre farm.

Attorney Carroll was unable from the old surveys and other plots and information furnished to him to write an accurate description of the premises to be conveyed to Read. Before preparing the deed, he, therefore, made a physical inspection of the Campsey property in the company of the nephew and was informed that the new home and about nine acres surrounding it, was to be excluded from the deed. His inspection further led him to believe that a fence line marked the southern boundary of the Campsey farm and that the land beyond the fence had been acquired by Campsey from Glenn Swartz, and was not included in the description of the 174 acre farm in 1948.

Carroll also noted that the fence at the easterly end, of what he believed was the southeast corner of the premises, had been moved and he thought it advisable to reserve a right of way across this corner to permit access to the property that had been acquired from Swartz, which contained about 19 acres.

At the closing, on or about December 30, 1977, Attorney Carroll presented the Reads with a deed describing the farm as 174.2677 acres in accordance with the plot of December 1948, but plaintiff, Mary Kathleen Campsey as executrix of the estate of her husband, James L. Campsey, excepted and reserved a tract of 9.277 acres north of State Route 231 on which the new home had been built.

She also excepted and reserved all previous con-

veyances "it being understood that there is approximately 150 acres more or less remaining which is being conveyed by the grantor to the grantees." But, also, stating in the deed "It is the express intent and purpose of this deed to convey all of the remaining property of the grantor conveyed in accord with the deed above referred to, lying South and West of State Route 231 also designated as State Route 62108."

The deed also excepted and reserved a 33 foot wide right of way for access to a parcel of land conveyed by Glenn Swartz to James L. Campsey, et ux., the right of way being located at the southeasterly corner of the above described tract adjoining property conveyed to James L. Campsey by Wilbur Dean Hutchinson.

In the fall of 1978, defendants, Read, engaged a surveyor, Joseph L. Filardi, whose survey showed that plaintiff had included in her deed to Reads a five acre tract lying to the south of the fence line, and had also included three lots, two, three and five, containing about three acres, all of which were a part of the 174 acres that Campsey had acquired in 1948, and which were not a part of the nineteen acres which had been acquired by Campsey from Glenn Swartz, this property lying to the south and east of the eight acres conveyed to Read.

These eight acres lie to the south and west of State Route 231, and were expressly included in the conveyance by Campsey to Read.

Mr. Alley, the real estate salesman for the listing broker, testified that Campsey's nephew, in September of 1977, pointed out the boundaries of the land to be conveyed, and that the eight acres in question were to be retained by Campsey for lot development, and was not to be included in the

sale. Attorney Carroll had also testified that the nephew had pointed out the line fence at the southerly and easterly side of the property as boundaries of the land to be conveyed to Read, and Carroll believed the land beyond the fence was a part of the premises acquired from Glenn Swartz. In this belief, of course, Carroll was mistaken.

However, there was insufficient testimony that the line fence had been pointed out to defendants, Read, as the boundary of the premises to be conveyed to them. Indeed, prior to closing, defendant, Paul Read, had consulted a tax assessment map which indicated lots had been laid out by Campsey and that these lots were a part of the premises to be conveyed to him.

The court, therefore, finds that the conveyance was made under a mistaken belief by the grantor, Campsey, that it did not include the eight acres in question. The court further finds, however, that the mistake was a unilateral mistake on the part of the grantor, and her attorney, and at the most would make the contract voidable and subject to rescission, rather than reformation.

The Restatement, Contracts 2d § 154 says this:

"A party bears the risk of a mistake when . . .
(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient. . . . . "

In the case at bar, both the seller and buyers knew there was no accurate survey describing the premises to be conveyed. Neither was willing to bear the expense of such survey. The court finds that under these circumstances both the seller and buyer bore the risk of what a survey would disclose.

In the case at bar, the facts as shown by the later survey clearly show that the eight acres in question were conveyed to defendants.

The survey also shows that the total acreage conveyed to defendants was 144.82, not the 150 acres estimated in the agreement of November 1977. It is clear that the risk of this lesser acreage was similarly borne by the buyers.

The sellers, however, have excepted and reserved a right of way, 33 feet in width, to the 19 acre parcel which the seller acquired from Glenn Swartz. This 33 foot right of way crosses the eight acres which is the subject of this litigation. If the parties cannot agree on the location of this right of way, the court's decree in this matter is without prejudice to the right of plaintiff to locate such right of way, by further legal action.

## DECREE

And now, October 3, 1982, the prayer of plaintiff, Mary Kathleen Campsey, as executrix of the estate of James L. Campsey, deceased, and in her individual capacity, for reformation of the deed to defendants, Paul C. Read and Marcia G. Read, his wife, conveying 144.82 acres in Donegal Township, Washington County, is refused, without prejudice, however, to plaintiff's right of way through the southerly portion of the aforesaid farm to the parcel of ground conveyed by Glenn Swartz, et ux., to James L. Campsey.

If no exceptions are filed within ten days after notice of the filing of this adjudication, a decree nisi shall be entered by the prothonotary on praecipe as a final decree.